[Mile No. 6132.]

## IN THE MATTER OF THE ESTATE OF SAKARIAS MARK-HUS, Deceased.

## P. H. MILLER, Respondent, v. O. B. WING, as Administrator of the Estate of Sakarias Markhus, Deceased, Appellant.

(249 N. W. 310.)

Opinion filed June 24, 1933.

*Hyland & Foster*, for appellant.

*R. L. Fraser*, for respondent.

BIRDZELL, J. This is an appeal from a judgment of the district court of McLean County in a proceeding appealed to that court from the county court. The judgment settled and approved certain items in an

account filed by the administrator subject to certain reservations, directed the conveyance of real estate, ordered the removal of the administrator and appointed another, directed certain proceedings against the administrator with reference to a mortgage on the real property and, except as modified, affirmed the order and decree of the county court, allowing the final account and report of the administrator. The salient facts are as follows:

On December 20, 1906, Sakarias Markhus contracted for the purchase of a half section of land from Karl Klein (south half of section 3, township 143, range 81, McLean county), agreeing to pay therefor $4,000 with interest at 8 per cent, payment to be made by delivery of half the crops each year on or before the 15th of November. At the time the contract was made, the title to the land was in one Charles F. Sanborn, but in October, 1912, he conveyed it to August E. Johnson, who was a partner of Klein in the real estate business, subject to a mortgage of $2,500 and subject to the Klein-Markhus contract, Johnson assuming the mortgage and contract obligations. Markhus lived on the land and farmed it until October 19, 1914, when he died, having at that time paid the interest and approximately $1,000 on the purchase price. Shortly after the death of Markhus, Johnson petitioned for letters of administration, to be issued to O. B. Wing, and on this petition Wing was appointed administrator on December 7, 1914, with Johnson and J. H. Olsen as his bondsmen. Wing is a farmer whose farm is adjacent to the Markhus farm. The inventory and appraisement, dated March 1st of the following year, showed the equity in this half section of land had an appraised value of $380 and the personal property a value of $1,723.53, of which $1,276.63 was listed as cash. It not being possible to provide for the prospective claims against the estate and to pay up the land contract, nor possible to rent the land on terms whereby half the crop would be available for application on the contract, an oral arrangement was made between Johnson and Wing whereby one-fourth the annual crops would be applied on the contract. Johnson was an officer in the First National Bank of Washburn. Wing carried his personal account there. He also carried there an account as administrator of the Markhus estate. All moneys coming to him as administrator, including the proceeds of crops, he deposited in the latter account, and out of this account he paid some

claims against the estate and made payments on the land contract from time to time, the first payment being made on December 10, 1914, in the amount of $714.06. The last payment prior to that was a payment of $700 made by Markhus in September, 1913. Wing kept no books or accounts, but relied largely upon the bank in such matters. The full consideration, $4,000 and interest, was ultimately paid out of Wing's account as administrator, and a conveyance was made in December, 1923, by Johnson to Wing as administrator, subject, however, to the $2,500 mortgage. Johnson caused the deed to be recorded in January, 1924. Wing did not know of this deed at the time and never accepted it, and he did not know of the $2,500 mortgage until 1926. He continued to deliver the proceeds of the crops and made the last application of the same in January, 1926. He had paid the full consideration for the land before learning of the mortgage. When Wing learned of the mortgage he asked Johnson to take it up and Johnson stated he was hard pressed for money and would take care of it later. Johnson died in June, 1928, without having procured a satisfaction of the mortgage. Wing continued to deposit in the First National Bank whatever money he received belonging to the estate. The bank closed in September, 1930. At that time the balance in the account of the administrator was $2,918.53. Wing also had his personal account there in which there was a balance of about $2,500 when the bank closed. One purpose that Wing had in building up the estate account in the bank, rather than making other disposition of the funds, was to enable him to protect the land from possible foreclosure of the mortgage that Johnson had failed to have satisfied.

For some years prior to January 1, 1931, the petitioner, Miller, was county judge of McLean county. Neither during his incumbency in that office nor before, was any account filed by the administrator. On December 29, 1930, just before retiring from the office, Miller wrote to the heirs of the deceased, who lived in Norway, advising them that he had been county judge for ten years, that he was retiring from the office, noting the fact that the estate of the deceased was not closed, requesting them to sign an enclosed power of attorney, and stating he would see they got their share of the estate. He advised them that there was a move to close the estate and make distribution and that if he did not get the power of attorney before the hearing it might be too

late. In one letter he stated "There is money here which you should have received fifteen years ago." In another, "I see that your brother died about fifteen years ago, and left some estate, this should have been distributed to you and your brother and sister fifteen years ago." The power of attorney which was enclosed was in the following form:

"Power of Attorney

"Know All Men By These Presents that I ——————— of —————, Norway, have appointed P. H. Miller, of Washburn, N. D., U. S. A., as my true and lawful attorney in fact with full power and authority to appear, sign, waive, and make full settlement for me in the estate of Sakarias Markhus, deceased."

On February 5, 1931, Miller petitioned that the administrator be required to file his account in court and that letters of administration be issued to him, Miller. Thereafter, in August, 1931, the same petitioner filed another petition, predicated partially upon a report filed by the administrator, and asked that the administrator show cause why he should not be removed, the letters revoked, and again prayed that the petitioner be appointed in his stead. In November, 1931, objections were also filed to the final account of the administrator, and the request for his removal was renewed. On November 6, 1931, the county court made an order finding, among other things, that the administrator had received the sum of $9,387.49 and expended $6,313.34; that there remained in his hands a receiver's certificate for the deposit in the First National Bank of Washburn in the sum of $2,626.68 (this was after crediting a 10 per cent dividend) and $447.47 in cash; and that there were unpaid claims of $508.32 and unpaid costs of administration of $430.13.

The petitioner's objections to certain items in the account were overruled. We will refer briefly to the principal items. One shows an expenditure of $417.75 to the First National Bank of Washburn to pay notes of the deceased. The court held the notes to represent debts justly due and overruled the objection which was made on the ground that no claim was presented to the administrator. An expenditure of $561.95, for funeral expenses, doctor and hospital bills, threshing, labor and hauling crop in 1914, was objected to on the ground that there were no itemized proofs of claim filed. The objection was overruled, the

court finding the claims to be just and that receipts for payment of such claims had been left in a box in the First National Bank and the box had been lost, presumably in moving the fixtures and records of the bank by the receiver. The court overruled an objection to the item of $2,918.03 in the form of a receiver's certificate representing the deposit in the closed First National Bank. The court declined to charge the administrator with $2,500, the amount of the mortgage against the land purchased, holding that the administrator had no knowledge of the mortgage at the time of making payments upon the land contract and that the mortgage was unenforceable on account of the statute of limitations. The court found certain unpaid claims to be just and directed the payment thereof, and one small claim was rejected because it was not filed in time. From this order an appeal was taken to the district court, where at the conclusion of a trial de novo the court found with respect to these principal items substantially as follows: That the administrator had paid the full consideration of $4,000 and interest upon the land contract while charged with notice of the mortgage liens against it and had negligently and carelessly failed to protect the interests of the estate against the mortgages of record (there was also a second mortgage of $187.50, a commission mortgage); and that the administrator had on deposit at the time of the closing of the First National Bank the sum of $2,918.53. The findings and conclusions charge the administrator with the receipt of $10,174.91 and credit him with expenditures of $6,379.71, $5,320.28 of which was on account of the land contract and taxes and $1,059.43 on account of claims and miscellaneous items of expense in the administration of the estate, not including attorneys or administrator's fees. He is charged with cash on hand of $3,795.20, but is permitted to carry the receiver's certificate in the First National Bank at $2,626.68, without prejudice to an action at law against the administrator for negligence in handling the account in the bank and making the deposits represented by the receiver's certificate. Unpaid claims of $508.57 are allowed substantially as in the probate court and the administrator is allowed a fee of $125 and his attorneys a fee of $200. The judgment removes the administrator and appoints the petitioner administrator upon his filing in the county court the requisite security bond. It requires Wing to pay over $1,168.52 in cash and to convey the land subject only to probate and

final decree. There is an express finding "That there is no evidence of moral dishonesty in the conduct of the administration of the estate in question," but it is found that he did conduct the affairs in a "negligent, reckless and careless manner."

The administrator was seventy-two years of age at the time of the trial and he did not attempt to justify, as of course he could not, his handling of the affairs of the estate in other than a prudent business manner. He professed, however, to have handled them as well, at least, as he had handled his own affairs. He has been honest and thrifty, but in business matters he should have been more self-reliant. His evidence shows that he is desirous of continuing as administrator only to the end that the affairs of the estate may be straightened out in the best manner possible. Some of the unpaid creditors expressed the desire that he be permitted to continue.

The judgment of the district court is attacked here on the ground that the powers of attorney under which the petitioner acted in instituting the proceedings in probate court were not properly authenticated so as to entitle them to be admitted in evidence; that if properly admitted they were not broad enough to enable the petitioner to institute this proceeding in his own name, or to take an appeal from the probate court; that certain of the findings with reference to the money received by the administrator are erroneous and not supported by the evidence; and upon other grounds to which it will be unnecessary to refer.

The record shows that the powers of attorney were introduced in evidence over an objection as to the sufficiency of the foundation. There were four such powers. Three of them purport to have been executed before witnesses and one to have been acknowledged before, or the signature verified by, a judicial officer in Norway. There was no proof of the handwriting of those who appear to have executed the powers, nor any proof of the handwriting of the purported witnesses and no testimony from the witnesses or others as to the execution of the documents. Neither was there any proof that the one power had been acknowledged before a notary public of Norway or before a judge, clerk, register, or commissioner of a court of record of such country. Comp. Laws 1913, § 5566. It is not enough that a document appear to have been executed or acknowledged with the requisite formality. It must be shown to have been actually so executed. The courts of

this state are not authorized to take judicial notice of the official acts or the genuineness of the signatures of minor officers of foreign countries. They take judicial notice of the official signatures and seals of the principal officers of the government in the legislative, executive and judicial departments of this state and of the United States (Comp. Law 1913, § 7938, ¶ 73), but not of foreign countries. Much less could the court take judicial notice of the due execution of the documents or of the handwriting of the persons who appear to have executed them or of the witnesses. Our statute specifically declares that any written instrument to which there is a subscribing witness "must be proved in the same manner as one having no subscribing witness whatever." Comp. Laws 1913, § 5890. So, the powers of attorney in the instant case were clearly inadmissible, and we therefore have no legal proof of the authority of the petitioner to institute the proceedings. Without this proof the appeal to the district court should have been dismissed and any further proceedings looking toward the settlement of the estate should have been regularly had in the county court.

It follows that this error vitiates the entire judgment of the district court, and that the cause must be remanded with directions to dismiss the appeal.

However, inasmuch as the estate is not closed, and inasmuch as we have had occasion to carefully examine the record in the county court and in the district court, we deem it proper to call attention to what appear to be some obvious errors in the account of the administrator in charging himself with moneys received. The account, together with the evidence in this record, shows that the administrator relied very largely upon the record of the deposits in the bank. These deposits are not questioned and it is not suggested that the administrator received any money belonging to the estate that he did not so deposit. The last two items on the account that entered into the total of $9,204.87 are February 2, 1921, $416.46 and April 24, 1923, $448.67. There is no record that these amounts were ever received by the administrator or that they were ever deposited in the bank. These figures were apparently placed in this column by mistake. They exactly correspond with two items which are shown to have been expended out of the bank account as payments on the land contract. Thus, the admin-

istrator apparently charges himself with $865.13 more than he actually received.

Another error: Plaintiff's exhibit 8 is a memorandum showing balances due, interest computations and payments made on the land contract, and the status with regard to the first mortgage from July 12, 1920, to January 11, 1925. On the back of this memorandum is the following item: "Paid March 1, 1922, $158.75." Apparently, this item was inadvertently omitted from the list of payments on the land contract and, consequently, the administrator remains charged with that amount of money, although it was applied on the land contract. Thus, there are errors in the account adverse to the administrator of more than $1,000—not mentioning the charges by the district court of which the appellant complains on this appeal.

We deem it proper to say, also, that the record shows conclusively that at the time of the death of Sakarias Markhus he left property which was very little more than sufficient to pay his debts and that if the estate had been closed promptly there would have been practically nothing for distribution to the heirs. The record shows that, through farming the land in which Sakarias Markhus had at the time of his death only an equity, appraised at $380, the administrator received throughout the succeeding years several thousand dollars, that he paid the taxes and applied some $3,000 in paying up the land contract and had almost $3,000 on deposit in the bank. This was all accumulated through the management of the administrator and was not in fact left by the deceased. The administrator unwisely paid up the land contract without investigating to determine whether the title was clear, and he left lying in the bank in his account as administrator almost $3,000, which is now partially lost through the failure of the bank. It is not possible to determine from this record to what extent the estate will suffer on account of these matters; but, if any substantial amount of property is ever available for distribution to the heirs, it will be due to the efforts of the administrator throughout the years.

There is some suggestion in the record that the mortgages on the land were in fact paid through the agency of Johnson to act for the mortgagee in making the collection. It appears certain that the administrator paid the full consideration for the land contract, and there is

some basis for an inference that the amount of the mortgage was received by Johnson as agent for the mortgagee. It is also suggested that the mortgage is barred by the statute of limitations and the county court has so found. Obviously, we make no holding on these points. The negligence of the administrator in the matter of payments upon the land contract and in the matter of carrying his account in the bank (see 2 Woerner, Administration, 2d ed. p. 711) are proper questions for the consideration of the county court in ultimately settling the final account of the administrator, as is also the question of whether the present administrator should be continued and the adequacy of the present bond in view of the death of Johnson who was a surety. We can see no necessity for a separate action at law to determine the liability of the administrator; it is a matter of settling his account.

Of course, it is not to be inferred that the proper administration of the estate, to the end that it be closed as soon as it may be and the rights of all parties protected, is to be in the least prejudiced through the failure of the present petitioner, who is respondent here, to have made proper proof of his right to act as attorney in fact for the heirs. It is the primary duty of the present county judge, just as it was the primary duty of the respondent petitioner while he was county judge, to see that the estate is properly administered and the rights of all interested parties protected. See §§ 8519 and 8525, Compiled Laws of 1913.

The cause is remanded to the district court with directions to dismiss the appeal from the county court.

Nuessle, Ch. J., and Christianson, Burr and Burke, JJ., concur.